## Staunton.

ROBERTSON AND OTHERS V. BRECKINRIDGE'S ADMR. AND OTHERS.

SEPTEMBER 20, 1900.

Absent, Riely, J.

1. EXECUTORS—*Accounts—Debits and Credits—Liabilities Incurred After the Death of Testator*.—An executor who is allowed credit for all payments made by him, including debts contracted by the widow in the management of the estate, should be charged with all assets received by him, including so much of the *usufruct* of the land held by the widow and executrix under the will of her testator as came into his hands.

2. EXECUTORS—*Borrowing Money—Subsequent Ratification by Legatees*.— An executor has no power to borrow money and charge the estate of his testator with it, unless such power is conferred by the will. Legatees cannot be charged with money so borrowed without their consent and approval, and a subsequent recognition thereof and promise to pay is without consideration and ineffectual.

Appeal from a decree of the Circuit Court of Botetourt county, pronounced October 27, 1899, in a suit in chancery, wherein the appellant, Nannie B. Robertson, was the complainant, and the appellees and others were the defendants.

*Reversed.*

This cause was once before heard in this court (*ante* page 561). The opinion then delivered, taken in connection with the present opinion, sufficiently states the case.

*Cocke & Glasgow, John Osborne* and *Eppa Hunton, Jr.*, for the appellants.

*Benjamin Haden* and *W. B. Simmons*, for the appellees.

KEITH, P., delivered the opinion of the court.

This case was before us at the September term, 1898, (*ante* page 561), and was sent back to the Circuit Court, to be proceeded with in accordance with the principles then announced. In the Circuit Court it was referred to a commissioner "to recast and reform the accounts of Cary Breckinridge, executor of Cary Breckinridge, deceased, and also the several accounts of indebtedness against the estate of Cary Breckinridge, deceased." In obedience to this decree, the commissioner returned his report, in which two accounts of the transactions of Cary Breckinridge, executor of Cary Breckinridge, deceased, are submitted, marked respectively A and B. By account A the executor is brought in debt to the estate in the sum of $1,107.87, as of May 13, 1880, with interest on $913.79 until paid; and by account B the estate of Cary Breckinridge, deceased, is found indebted to his executor in the sum of $3,028.79, as of February 2, 1880, with interest on $2,749.22, part thereof, until paid.

Exceptions were filed to each of these statements, but the court in its decree adopted and confirmed statement B, and adjudged an amount therein set forth to be a prior charge and lien on the estate of Cary Breckinridge, deceased, whether "unsold and undistributed, or as advanced to the several children of the said Breckinridge, deceased."

The commissioner, in his report, discusses the principles by which he was controlled in the statement of accounts A and B, points out the differences between them, and expresses the decided opinion that account A is correct, and should be adopted. In it he says the executor " is charged only with such assets as

came to his hands in the fall of, and after the year, 1869, and is credited with such debts as he paid, and such disbursements as he made in the fall of 1869, and afterwards. The principle upon which this statement is made, and the reason supporting it, appeal very strongly to your commissioner, and are as follows:

" The record shows that the executor and executrix had no private estate or means with which to pay debts, and it seems to be clear from the record, that the only source from which they, or either of them, up to the year 1871, derived the means to pay debts of the testator, or debts made by the widow, was the estate of the testator itself."

When the case was before us at a former term, the executor was allowed credit for taxes paid by him upon the estate of Cary Breckinridge, deceased, which accrued after the testator's death, and for certain debts which were contracted not only by the testator, but some of them by his widow, in the management of the estate. In account A the executor is given credit by these disbursements, but he is charged with so much of the *usufruct* of the land held by the widow and executrix under the will of her testator as came into his hands, or, as the commissioner states it: "He is given credit for the debts paid out of the proceeds of the farm prior to the fall of 1869, and, on the other hand, is charged with the amount of proceeds so used."

In account B the same credits are given the executor, but he is not charged with the proceeds of the farm prior to the fall of 1869, and this branch of the report the commissioner concludes as follows:

" Your commissioner is constrained to report that, in his opinion, after a laborious examination of the record and a careful study of the questions, the result of this 'account B' is not fair to the estate, and for this reason simply:

" Giving to the opinion and decree of the Court of Appeals its broadest scope and effect; allowing to the executors credit for every payment made by them, whether of debts of the testator,

or debts contracted by the widow in her management of the estate before its final distribution, your commissioner cannot escape the conclusion that the executors should be charged with all of the proceeds of the estate used in the payment of these debts. That this has not been done, there is not the slightest doubt on his mind. And in his opinion, no account, which is admittedly settled on the principle of giving the executors credit for all their payments, and charging them with only a part of the assets of the estate used in making such payments, can be a correct and fair settlement."

This position seems to us unanswerable.

Among other questions discussed at the former hearing of this cause, was the claim of Mrs. Virginia C. Breckinridge upon the assets of the estate of Cary Breckinridge, deceased, for certain moneys which it is alleged constituted her separate estate, and were used by her husband, the executor, in the payment of the debts of his testator, with the undertaking upon the part of the executor that his wife should be reimbursed the money so advanced by her.

With respect to this claim, the opinion of this court *(ante* page 567) is as follows: "There is a claim on the part of the wife of Cary Breckinridge, Jr., which is to be considered. After the death of the testator, certain moneys belonging to the wife of the executor were used in payment of the debts of the estate. The decree complained of allows this claim for money thus advanced to the estate, and directs that it be paid out of the amount found due by the testator to the executor. So long as the claim asserted by Mrs. Virginia C. Breckinridge, wife of Colonel Cary Breckinridge, is less than the sum which he is entitled to recover from the estate, it does not appear to be a matter of concern to the other devisees and legatees of Cary Breckinridge, Sr. If they are to pay it, it is of no moment to them whether it is to be paid to Colonel Breckinridge or to his

wife. For the present, therefore, the determination of her rights is reserved.

" If, upon the settlement of the accounts of the executor when this case is again before the commissioner, the amount due the executor shall be found insufficient to satisfy the claim of Mrs. Virginia C. Breckinridge, the commissioner will then inquire and report upon her right to recover, in the light of the evidence in the record, and of such as may be adduced before him in the contingency mentioned."

The commissioner reports, that, " in his opinion, the debt of Mrs. Virginia C. Breckinridge is a valid and binding debt against the whole estate, whether the estate is indebted to the executor or not. But as the executors got credit for the debt paid with her money, and were not charged with the amount furnished by her, her debt must be deducted from the amount due them."

The amount of the debt claimed by the widow, principal and interest, at the date of the report is $3,989.49, of which about $1,500 was principal advanced in the early part of 1871. The Circuit Court, in adopting statement B, by which the estate was found in debt to the executor, had a fund under its control more than sufficient to satisfy this demand; and if we had concurred with the Circuit Court as to the settlement of the executorial account, the devisees and legatees of Cary Breckinridge, Sr., would have been indifferent as to the allowance of the demand of Mrs. Virginia C. Breckinridge, but the decree of the Circuit Court makes that demand a charge against the estate' of Cary Breckinridge, deceased, independent of the condition of the accounts of the executor, so that, having reached the conclusion that the executor is indebted to the estate instead of the estate being indebted to the executor, we are obliged to deal with this question.

The duty of an executor, when the will has been proved and he has qualified, is to collect the assets, pay the debts, distribute

the surplus, if any, among those entitled, and settle his accounts. Unless power has been given to him by the will, and none was conferred in this case, he has no authority to borrow money and bind the estate which he represents. His power and authority are co-extensive with his duty, and the only duty imposed upon him with reference to the payment of debts is to apply the assets of the estate which he represents in due course of law. This is, we think, not seriously disputed; but it is contended that what the executor did in this case was done with the knowledge and approval of the devisees and legatees, who are now making objection.

The executor in his deposition given in this cause, in answer to the question, " Did you regard this as an investment of that amount for her, or did you promise her that she should be reimbursed from that source? " says: " Of course, she expected to be reimbursed from that source. 'The money was used more from pressure than anything else. There were some very pressing debts, and there was no money from any other source with which to meet them, and her money was used. It was an investment that I did not like much, but she, of course, expected to be reimbursed from that source. My mother was principally instrumental in inducing my wife to allow the use of this money in this way."

G. W. Breckinridge states: " I know that he did use his wife's money in that way, as well as I could know it without just seeing it handed to the parties to whom it was paid. Somewhere between 1869 and 1871 we had frequent conferences in the family—that is, between mother, brother and myself—and in a general way including my sisters, Eliza and Emma, about the debts then due by my father's estate, and it was agreed that certain money of brother's wife amounting to something like $1,600, to the best of my recollection, should be applied to the payment of these debts—can't say now what debts they were. Have frequently heard mother express her gratification at the

safe investment which had been made of Mrs. Virginia Breckinridge's money in debts due by my father's estate, and know that we all recognized the fact that these debts had been discharged in that way."

There are other statements of like character scattered through the record, the only effect of which is to establish the truth of the statement quoted from the deposition of the executor "that his mother was principally instrumental in inducing his wife to allow the use of her money in this way." Indeed, Mrs. Virginia Breckinridge herself fully corroborates this view. She was asked in the course of her deposition: "Then, as I understand you, this money was used by your husband, Colonel Cary Breckinridge, by and with the consent and solicitation of Mrs. Emma W. Breckinridge, in the payment of debts against the estate of Cary Breckinridge, deceased, the use whereof was considered by her as an investment for you, your use and benefit, and considered by her a prior charge on the estate of the said Cary Breckinridge, deceased; am I correct?" Answer: "Yes, sir."

On the other hand, it is shown by the deposition of Miss Eliza Breckinridge and Mrs. Robertson that, while they had heard this matter spoken of in a general way, they were not informed as to the sum advanced, nor as to the debts to which it was applied; that it was never mentioned to them except in a casual and conversational way, and never as a matter of business. There is no evidence that there was such knowledge of, and acquiescence in, the transaction upon the part of those in interest before the money was received and used by the executor, as would bind the appellants by estoppel, if an obligation upon them could be created in that way, and their subsequent recognition of it as binding upon them is without consideration and ineffectual.

This view of the case renders it unnecessary for us to decide whether the money claimed by Mrs. Virginia C. Breckinridge

was a part of her separate estate, or whether, as appellants contend, it was money inherited by her before the passage of the "Married Woman's Act," unimpressed with any trust, and which, having been reduced by her husband into possession, became his property by virtue of his marital rights.

The decree of the Circuit Court must be reversed, and a decree entered in accordance with this opinion.

*Reversed.*